# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### JACKSON  DIVISION

SOUTHERN DISTRICT OF MISSISSIPPI
**F I L E D**

MAY 1 9 2006

J T NOBLIN, CLERK

BY_____ DEPUTY

TRANSCONTINENTAL INSURANCE COMPANY,
CONTINENTAL CASUALTY COMPANY,
VALLEY FORGE INSURANCE COMPANY, AND
TRANSPORTATION INSURANCE COMPANY,

        **Plaintiffs,**

v.

        Civil Action No.: 3:06cv272 HTW-JCS

PLEKO SOUTHEAST CORPORATION, *et al.,*

        **Defendants.**

## COMPLAINT FOR DECLARATORY JUDGMENT
## AND AFFIRMATIVE RELIEF

Plaintiffs, Transcontinental Insurance Company, Continental Casualty Company, Valley Forge Insurance Company, and Transportation Insurance Company (collectively "Plaintiffs"), by and through their attorneys, present this complaint for declaratory judgment and other relief against Defendants identified herein:

### INTRODUCTION

1.      This is a declaratory judgment action, a common type of suit between insurance companies and their policyholders which allows each to resolve what duties the insurance companies have to cover a particular claim.  The law generally encourages insurance companies to bring these types of actions to resolve insurance coverage questions.

2.      This declaratory judgment action stems from suits in Mississippi brought by various homeowners against manufacturers, distributors and installers of Exterior Insulation Finishing Systems, also known as artificial stucco and EIFS, and contractors that built houses

using EIFS.  The homeowner suits generally a llege EIFS is defective and caused property damage.

3.        The questions in this declaratory judgment action concern whether and the extent to which the EIFS manufacturers and distributors are covered for the homeowners' claims against each.  This declaratory judgment action does not concern whether the homeowners can sue the EIFS manufacturers and distributors or whether the EIFS defendants are liable to the homeowners - those issues are being and/or will be decided in various separate homeowner lawsuits against the manufacturers, distributors and installers of EIFS.

4.        This declaratory judgment action names as defendants the EIFS manufacturers and distributors; certain other interested parties; and the individual homeowners who have Mississippi suits pending against manufacturers, distributors and installers of EIFS.  Recently two homeowners, through counsel, filed suit directly against the insurance companies that issued insurance policies to the EIFS manufacturers and distributors to seek a determination of whether or not the insurance policies issued to the EIFS manufacturers and distributors provide coverage for the claims asserted by the homeowners.  The proper place to uniformly and efficiently resolve the question of whether or not the insurance policies issued to the EIFS manufacturers and distributors provide coverage to the all similarly situated homeowners is in this single action, not multiple separate homeowner suits.  Similarly, the rights and duties of the insurance companies to the EIFS manufacturers and distributors may also be resolved in this suit.

5.        The insurance companies do not seek money from the homeowners but, due to the homeowners' pending claims against the EIFS manufacturers and distributors and their interest in the outcome of the coverage questions raised in this declaratory judgment action, each are included as a defendant.  Also, each of the homeowners by virtue of their pending suit

against the EIFS manufacturers and distributors is an appropriate party in this declaratory judgment action.

6.      This declaratory judgment action seeks a binding declaration concerning the rights and obligations, if any, of the insurance companies that issued policies to the EIFS manufacturers and distributors against whom the homeowners filed lawsuits.  This action will permit the opportunity for a uniform coverage determination and eliminate the potential that different courts might reach different and inconsistent conclusions about the proper interpretation of the insurance policies.  This comprehensive declaratory judgment action will provide a single, convenient forum for that determination and conserve limited judicial resources.  Importantly, this declaratory judgment action will make it unnecessary for the homeowners; the EIFS manufacturers and distributors; or the other interested parties to institute and pursue multiple actions in many different courts raising the same issues that will be decided herein.

PARTIES

7.      Plaintiff Transcontinental Insurance Company ("Transcontinental") is a New York corporation, organized as a stock property/casualty insurance company, with its principal place of business in the State of Illinois.

8.      Plaintiff Continental Casualty Company ("Continental Casualty") is an Illinois stock insurance company with its principal place of business in the State of Illinois.

9.      Plaintiff Valley Forge Insurance Company ("Valley Forge") is a Pennsylvania corporation, organized as a stock insurance company, with its principal place of business in the State of Illinois.

10.      Plaintiff Transportation Insurance Company ("Transportation") is an Illinois stock insurance company with its principal place of business in the State of Illinois.

11.     Defendant Pleko Southeast Corporation ("Pleko Southeast") was, at all times relevant hereto, an Ohio corporation with its principal place of business in the State of Florida. Pleko Southeast was dissolved under Ohio law in September, 2005.

12.     Defendant Pleko Products, Inc. ("PPI") is a Delaware corporation with its principal place of business in the State of Washington.

13.     Defendant The Roberts Group, Inc. is an Ohio corporation with its principal place of business in the State of Ohio.

14.     Defendant Roberts Associates, Inc. is an Ohio corporation with its principal place of business in the State of Ohio.

15.     Defendant the Estate of Merle E. Roberts is domiciled in the State of Ohio.

16.     Defendant Dorothy B. Roberts is an adult resident citizen of the State of Ohio.

17.     Defendant Byrd & Cook Wall And Structure Coatings, Inc. ("Byrd & Cook") is a Mississippi corporation with its principal place of business in the State of Mississippi.

18.     Defendant Homeowners ("Homeowners") are identified in Exhibit 1 attached hereto and incorporated herein.  Each Homeowner is an adult resident citizen of Mississippi.

19.     Upon information and belief, Defendant Lloyd Burton, Inc. is a Mississippi corporation with its principal place of business in the State of Mississippi.

20.     Upon information and belief, Defendant GLS Builders, Inc. is a Mississippi corporation with its principal place of business in the State of Mississippi.

21.     Upon information and belief, Defendant Noble Real Estate, Inc. is a Mississippi corporation with its principal place of business in the State of Mississippi.

22.     Upon information and belief, Arthur Noble is an adult resident citizen of the State of Mississippi.

4

23.     Upon information and belief, Defendant Charlie B. Brock Builder, Inc. is a Mississippi corporation with its principal place of business in the State of Mississippi.

24.     Upon information and belief, Defendant Georgetown Realty, Inc. is a Mississippi corporation with its principal place of business in the State of Mississippi.

25.     John Doe 1 - 200 unknown homeowners, insureds, and other interested parties.

## JURISDICTION AND VENUE

26.     This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201, *et seq.* and Fed. R. Civ. P. 57, as well as for other relief.

27.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.

28.     There is complete diversity of citizenship between the Plaintiffs and Defendants.

29.     There is an actual controversy now existing between the Plaintiffs and the Defendants as to which the Plaintiffs seek the judgment of this Court.

30.     The amount in controversy, exclusive of interest and cost, exceeds the sum of $75,000.

31.     This Court also has supplemental jurisdiction in this action pursuant to 28 U.S.C. § 1367.

32.     Venue is proper in the United States District Court for the Southern District of Mississippi pursuant to 28 U.S.C. § 1361.

## INSURANCE POLICIES

33.     Plaintiffs are insurance companies engaged in the business of issuing commercial general liability and umbrella excess insurance, among other things.

34.     Transcontinental issued the following primary insurance contracts under which Pleko Southeast, PPI, The Roberts Group, Inc., Roberts Associates, Inc., Merle E. Roberts (currently known as the Estate of Merle E. Roberts), and Dorothy B. Roberts (collectively, the "Pleko Defendants") are named insureds:

| Policy No. | Policy Period |
| --- | --- |
| MA 107977828 | 12/17/90 - 01/01/92 |
| MA 107977828 | 01/01/92 - 01/01/93 |
| MA 107977828 | 01/01/93 - 01/01/94 |
| MA 107977828 | 01/01/94 - 01/01/95 |
| MA 107977828 | 01/01/95 - 01/01/96 |
| MA 107977828 | 01/01/96 - 01/01/97 |
| MA 107977828 | 01/01/97 - 01/01/98 |

35.     Continental Casualty issued the following umbrella excess insurance contracts under which the Pleko Defendants are insureds:

| Policy No. | Policy Period |
| --- | --- |
| 07977831 | 12/17/90 - 01/01/92 |
| 07977831 | 01/01/92 - 01/01/93 |
| 07977831 | 01/01/93 - 01/01/94 |
| 07977831 | 01/01/94 - 01/01/95 |
| 07977831 | 01/01/95 - 01/01/96 |
| 07977831 | 01/01/96 - 01/01/97 |
| 07977831 | 01/01/97 - 01/01/98 |

36.     Valley Forge issued the following insurance contracts to Byrd & Cook:

| Policy No. | Policy Period |
| --- | --- |
| 2057407543 | 6/10/03 - 6/10/04 |
| 2057407543 | 6/10/04 - 6/10/05 |

37.     Transportation issued the following insurance contract to Byrd & Cook:

| Policy No. | Policy Period |
| --- | --- |
| 2057407543 | 6/10/02 - 6/10/03 |

38.     The available contract documentation identified in paragraphs 33-37 will be available for review at the offices of the Plaintiffs' attorneys at a convenient date and time because the contracts are too voluminous for filing.

## UNDERLYING SUITS

39.     Homeowners are necessary parties to this action pursuant to Fed. R. Civ. P. 19 because they have sued the Pleko Defendants, and/or Byrd & Cook, and have sued, have been granted leave to amend their complaints, or may sue Plaintiffs, in numerous state court suits pending in five different counties in Mississippi (the "state court suits"). A list of the state court suits is included in Exhibit 2, which is attached hereto and incorporated herein.  Adjudication of the rights and obligations of these parties in a single forum is necessary to avoid multiplicity of forums and inconsistent judgments.  Therefore, this court is the proper forum for this dispute.

40.     In their state court suits, the Homeowners allege that the Pleko Defendants and Byrd & Cook engaged in the defective manufacture, defective installation and/or distribution of Exterior Insulation Finishing System ("EIFS"), commonly referred to as synthetic stucco, with respect to the houses owned by Homeowners identified in Exhibit 1.

41.     Plaintiff Transcontinental has provided a complete defense to the Pleko Defendants in the state court suits subject to a reservation of rights to contest Transcontinental's duty to defend or indemnify the Pleko Defendants under the Transcontinental insurance contracts.

42.     Plaintiffs Transportation and Valley Forge have provided a complete defense to Byrd & Cook in the state court suits subject to a reservation of rights to contest their duty to defend or indemnify Byrd & Cook under the Transportation and Valley Forge insurance contracts.

43.     Lloyd Burton, Inc., GLS Builders, Inc., Noble Real Estate, Inc., Arthur Noble, Arnold Noble Builders, Charlie B. Brock Builder, Inc., and Georgetown Realty, Inc. (collectively, the "Contribution Defendants") have all been named as defendants in the state court suits and have brought cross-claims against one or more of the Pleko Defendants seeking contribution for any judgments against them.

44.     Homeowners are plaintiffs in the state court suits who allege that the Pleko Defendants, Byrd & Cook, other EIFS manufacturers, installers and distributors, builders and contractors, and architects, including the Contribution Defendants, defectively designed, manufactured, promoted, marketed, distributed, sold, and installed EIFS that allegedly caused damage to their homes.

45.     In the state court suits some Homeowners are seeking or will seek declaratory judgments as to whether the insurers of the defendants in those suits, including Plaintiffs, have a duty to indemnify their policyholders for judgments the Homeowners may obtain against those defendants.

COUNT I.
INSURANCE COVERAGE CONTROVERSY RELEVANT
TO THE TRANSCONTINENTAL AND CONTINENTAL CASUALTY CONTRACTS

46.     The Homeowners and the Contribution Defendants will attempt to collect any judgment they obtain against the Pleko Defendants in the state court suits from Transcontinental and Continental Casualty under the Transcontinental and Continental Casualty insurance contracts.

47.     For the reasons set forth in more detail below, the Transcontinental and Continental Casualty insurance contracts do not cover some or all of the Homeowners' and Contribution Defendants' claims against the Pleko Defendants in the state court suits.

48.     Transcontinental issued insurance contracts with periods from December 17, 1990 to January 1, 1995 containing the following Insuring Agreement, terms, exclusions and definitions:

**SECTION I – COVERAGES**

**COVERAGE   A.   BODILY   INJURY   AND   PROPERTY   DAMAGE LIABILITY**

1.     **Insuring Agreement.**

     **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result. But:

        **(1)**    The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

        **(2)**    Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

        No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.

     **b.**    This insurance applies to "bodily injury" and "property damage" only if:

        **(1)**    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;" and

        **(2)**    The "bodily injury" or "property damage" occurs during the policy period.

*          *          *

2.     **Exclusions.**

     This insurance does not apply to:

a.  "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

*     *     *

b.  "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

    (1)  Assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

    (2)  That the insured would have in the absence of the contract or agreement.

*     *     *

f.  (1)  "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

    (a)  At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

    (b)  At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

    (c)  Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

    (d)  At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

10

**(i)**    if the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

**(ii)**   if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraphs (a) and (d)(i) do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

**(2)**    Any loss, cost or expense arising out of any:

**(a)**    Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

**(b)**    Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.   Waste includes materials to be recycled, reconditioned or reclaimed.

\*        \*        \*

**j.**    "Property damage" to:

\*        \*        \*

**(5)**    That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

11

**(6)**     That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

\*          \*          \*

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

**k.**     "Property damage" to "your product" arising out of it or any part of it.

**l.**     "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.**     "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)**     A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work;" or

**(2)**     A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n.**     Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)**     "Your product;"

**(2)**     "Your work;" or

**(3)**     "Impaired property;"

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a

12

known or suspected defect, deficiency, inadequacy or dangerous condition in it.

\*     \*     \*

## SECTION V – DEFINITIONS

\*     \*     \*

3.      "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\*     \*     \*

5.      "Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

**a.**      It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.**      You have failed to fulfill the terms of a contract or agreement;

If such property can be restored to use by:

**a.**      The repair, replacement, adjustment or removal of "your product" or "your work;" or

**b.**      Your fulfilling the terms of the contract or agreement.

\*     \*     \*

9.      "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\*     \*     \*

11.    **a.**      "Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)**      Products that are still in your physical possession; or

**(2)**      Work that has not yet been completed or abandoned.

**b.**   "Your work" will be deemed completed at the earliest of the following times:

    **(1)**   When all of the work called for in your contract has been completed.

    **(2)**   When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

    **(3)**   When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**c.**   This hazard does not include "bodily injury" or "property damage" arising out of:

    **(1)**   The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the "loading or unloading" of it;

    **(2)**   The existence of tools, uninstalled equipment or abandoned or unused materials;

    **(3)**   Products or operations for which the classification in this Coverage Part or in our manual of rules includes products or completed operations.

**12.**   "Property damage" means:

**a.**   Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.**   Loss of use of tangible property that is not physically injured.  All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

*   *   *

**14.**   "Your product" means:

14

**a.**    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(1)**    You;

**(2)**    Others trading under your name; or

**(3)**    A person or organization whose business or assets you have acquired; and

**b.**    Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

**a.**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product;" and

**b.**    The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

**15.**    "Your work" means:

**a.**    Work or operations performed by you or on your behalf; and

**b.**    Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

**a.**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work;" and

**b.**    The providing of or failure to provide warnings or instructions.

\*    \*    \*

49.    Transcontinental also issued insurance contracts for the periods January 1, 1995 to January 1, 1998 which, in all relevant respects, contain terms identical to the terms in the

December 17, 1990 to January 1, 1995 contracts quoted above, except for differences in the enumeration of certain paragraphs and the addition of certain headings.

50.     Under the terms, conditions, definitions, limitations and exclusions in the Transcontinental contracts, including without limitation the policy language set forth above, the Transcontinental contracts do not cover the claims asserted against the Pleko Defendants in the state court suits to the extent that:

a.  the claims are for "bodily injury" or "property damage" that takes place outside the policy period(s);

b.  the claims are for "bodily injury" or "property damage" that was expected or intended from the standpoint of the insured as barred by Exclusion a;

c.  the claims are for "bodily injury" or "property damage" for which the insured is obligated to pay as damages by reason of the assumption of liability in a contract or agreement as barred by Exclusion b;

d.  the claims are for "bodily injury" or "property damage" barred by Exclusion f;

e.  the claims are for "property damage" barred by Exclusion j;

f.  the claims are for "property damage" to "your product" arising out of it or any part of it as barred by Exclusion k;

g.  the claims are for "property damage" to "your work" arising out of it or any part of it as barred by Exclusion l;

h.  the claims are for "property damage" to "impaired property" or property that has not been physically injured, arising out of a defect, deficiency, inadequacy or dangerous condition in "your product" or "your work," or a

16

delay or failure by the insured or anyone acting on its behalf to perform a contract or agreement in accordance with its terms as barred by Exclusion m;

i.  the claims are for any loss, cost or expense incurred by the insured or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of the EIFS product, "your work" or "impaired property" as barred by Exclusion n;

j.  the claims are for alleged damages that are not "damages," as the contracts use that term;

k.  the claims are for punitive damages that are not covered as a matter of law or public policy;

l.  one or more of the conditions of the contracts has been breached or otherwise has not been met;

m.  there has been no "occurrence" as defined;

n.  the claims are for damages not on account of "bodily injury" or "property damage" as defined;

o.  the claims arise from conditions, perils, hazards, losses or liabilities that were known to the policyholder at the time the contract was issued, were the result of a non-fortuitous event and/or otherwise constitute an uninsurable risk;

p.  the policyholder or someone acting on its behalf concealed, misrepresented or failed to disclose material facts in applying for the contract(s);

q.  the alleged liabilities arose from a loss that was in progress or that was known prior to the effective date of the relevant contract(s);

r.  the limits set forth in the insurance contracts have been impaired and/or exhausted by the payment of past claims;

s.  deductibles and/or self insured retention amounts have not been paid; and/or

t.  some other contract provision limits or eliminates coverage.

51.    The Continental Casualty contracts contain the following Insuring Agreement, terms, exclusions and definitions:

**SECTION I-COVERAGES**
**1.    Insuring Agreement.**

We will pay on behalf of the insured all sums that the insured becomes legally obligated to pay as "ultimate net loss" because of:

a.    "Bodily Injury";
b.    "Property Damage";
c.    "Personal Injury"; or
d.    "Advertising Injury";

caused by an "incident" which takes place during the policy period and in the policy territory.

\*      \*      \*

**2.    Exclusions.**

This insurance does not apply to:

\*      \*      \*

a.    "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

\*      \*      \*

f.    (1)    "Bodily injury", "property damage" or "personal injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

\*      \*      \*

18

**(d)**     At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

   **(i)**     if the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

   **(ii)**     if the operations are to test for, monitor, clean up, remove, contain, treat    detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

                        \*        \*        \*

**(2)**     Any loss, cost or expense arising out of any:

   **(a)**     Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

   **(b)**     Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.   Waste includes materials to be recycled, reconditioned or reclaimed.

                        \*        \*        \*

**j.**     "Property damage" to

                        \*        \*        \*

**(5)**     That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

19

**(6)**     That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

\*          \*          \*

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

**k.**     "Property damage" to "your product" arising out of it or any part of it.

**l.**     "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.**     "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)**     A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)**     A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n.**     Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)**     "Your product";

**(2)**     "Your work"; or

**(3)**     "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a

known or suspected defect, deficiency, inadequacy or dangerous condition in it.

\*      \*      \*

p.      Liability for a wrongful act, error, omission or breach of duty by an insured in the performance of the office of director or officer of an organization.

\*      \*      \*

**SECTION V-DEFINITIONS**

\*      \*      \*

3.      **"Bodily injury"** means bodily injury, sickness or disease; mental injury or mental anguish sustained by a person, including death resulting from any of these.

\*      \*      \*

5.      **"Impaired property"** means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

a.      It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b.      You have failed to fulfill the terms of a contract or agreement;

if such property can be restored by:

a.      The repair, replacement, adjustment or removal of "your product" or "your work"; or

b.      Your fulfilling the terms of the contract or agreement.

\*      \*      \*

9.      **"Incident".**

a.      With respect to claims which are covered, in whole or in part, by the immediate "scheduled underlying insurance" policy (whether or not the limits thereof become reduced or exhausted), "incident" means either an occurrence or offense, depending upon which term triggers coverage in your immediate "scheduled underlying insurance" policy.

(1)    The trigger of coverage, with respect to "bodily injury" and "property damage", is an occurrence.  When coverage is triggered by an occurrence, then "incident" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, that take place during this policy period.

(2)    The trigger of coverage, with respect to "personal injury" and "advertising injury", is an offense.

(a)    For "personal injury", when coverage is triggered by an offense, then "incident" means an act or series of acts of the same or similar nature committed during this policy period.  All loss arising out of such act or series of acts, regardless of the frequency thereof or the number of claimants, shall be deemed to arise out of one offense.

(b)    For "advertising injury" when coverage is triggered by an offense, then "incident" means an act or series of acts in which the same or similar advertising material is used, regardless of the number or kind of media used, committed during this policy period. All damages involving the same injurious material or act, regardless of the:

(i)    frequency or repetition thereof;

(ii)    number or kind of media used; or

(iii)    number of claimants;

shall be deemed to arise out of one offense.

b.    With respect to claims which are covered by this policy, but which are not covered by the immediate "scheduled underlying insurance", "incident" means either an occurrence or offense.

\*          \*          \*

11.    a.    **"Products-completed operations hazard"**
Includes "bodily injury" and "property damage" occurring away from premises an insured owns or rents and arising out of "your product" or "your work" except:

(1)    Products in your physical possession; or

(2)    Work not yet completed or abandoned.

b.    "Your work" will be deemed completed at the earliest of the following:

(1)    When all work called for in the "insured contract" has been completed;

(2)    When all of the work to be done at the site has been completed if the "insured's contract" calls for work at more than one site; or

(3)    When that part of the work done at a job site has been put to its intended use by a person or organization other than another contractor or subcontractor working on the same project.

Work that may need:

(a)    service;
(b)    maintenance;
(c)    correction;
(d)    repair; or
(e)    replacement;

but which is otherwise complete, will be treated as completed.

c.    This hazard does not include "bodily injury" or "property damage" arising out of:

(1)    The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the "loading or unloading" of it; or

(2)    The existence of:

(a)    tools;
(b)    uninstalled equipment; or
(c)    abandoned or unused materials.

12.    **"Property damage"** means:

    a.    Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b.    Loss of use of tangible property that is not physically injured.  All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

*     *     *

14.    **"Your product"** means:

    a.    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        (1)    You;

        (2)    Others trading under your name; or

        (3)    A person or organization whose business or assets you have acquired; and

    b.    Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes warranties or representations made with respect to the fitness, quality, durability, performance or use of "your product" and the providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

15.    **"Your work"** means:

    a.    Work or operations performed by you or on your behalf; and

    b.    Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes warranties or representations made with respect to the fitness, quality, durability, performance or use of "your work" and the providing of or failure to provide warnings or instructions.

*     *     *

18.    **"Ultimate net loss".**

a.    "Ultimate net loss" means the actual damages the insured is legally obligated to pay, either through:

    (1)    final adjudication on the merits; or

    (2)    through compromise settlement with our written consent or direction;

because of "incident(s)" covered by this policy.

However, it includes the above mentioned sums only after deducting all other recoveries and salvages.

b.    "Ultimate net loss" does not include the following:

    (1)    costs or expenses related to:

        (i)    litigation;
        (ii)    settlement;
        (iii)    adjustment; or
        (iv)    appeals;

        nor costs or expenses incident to the same which an "underlying
insurer" has paid, incurred or is obligated to pay to or on behalf of the insured;

    (2)    pre-judgment interest;

    (3)    office costs and expenses and salaries and expenses of the employees of an insured;

    (4)    our office costs and expenses and salaries of our employees; or

    (5)    general retainer and/or monitoring fees of counsel retained by the insured.

*      *      *

52.    Under the terms, conditions, definitions, limitations and exclusions in the Continental Casualty contracts, including without limitation the policy language set forth above,

the Continental Casualty contracts do not cover the claims asserted against the Pleko Defendants in the state court suits to the extent that:

    a.  the claims are for "bodily injury" or "property damage" caused by an "incident" taking place outside the policy period(s);

    b.  the claims are for "bodily injury" or "property damage" that was expected or intended from the standpoint of the insured as barred by Exclusion a;

    c.  the claims are for "bodily injury" or "property damage" barred by Exclusion f;

    d.  the claims are for "property damage" barred by Exclusion j;

    e.  the claims are for "property damage" to "your product" arising out of it or any part of it as barred by Exclusion k;

    f.  the claims are for damages for "property damage" to "your work" arising out of it or any part of it as barred by Exclusion l;

    g.  the claims are for damages for "property damage" to "impaired property" or property that has not been physically injured, arising out of a defect, deficiency, inadequacy or dangerous condition in "your product" or "your work," or a delay or failure by the insured or anyone acting on its behalf to perform a contract or agreement in accordance with its terms as barred by Exclusion m;

    h.  the claims are for any loss, cost or expense incurred by the insured or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of the EIFS product, "your work" or "impaired property" as barred by Exclusion n;

i.   the claims are for liability barred by Exclusion p;

j.   the claims are for punitive damages that are not covered as a matter of law or public policy;

k.   one or more of the conditions of the contracts has been breached or otherwise has not been met;

l.   there has been no "incident" as defined in the contracts;

m.   the claims are not for damages on account of "bodily injury" or "property damage" as defined by the contracts;

n.   the claims arise from conditions, perils, hazards, losses or liabilities that were known to the policyholder at the time the contract was issued, were the result of a non-fortuitous event and/or otherwise constitute an uninsurable risk;

o.   the policyholder or someone acting on its behalf concealed, misrepresented or failed to disclose material facts in applying for the contract(s);

p.   the alleged liabilities arose from a loss that was in progress or that was known prior to the effective date of the relevant contract(s);

q.   there is no "ultimate net loss" as defined by the contracts;

r.   the underlying insurance has not been exhausted by reason of payments thereunder as a result of "incidents" taking place during the policy period(s); and/or

s.   some other contractual provision limits or eliminates coverage.

53.   For one or more of the reasons set forth above, as well as other reasons that may hereafter be discovered, there is no coverage under the Transcontinental and Continental

Casualty contracts and, therefore, Plaintiffs have no obligation to defend or indemnify the Pleko Defendants for the claims made against them by the Homeowners or Contribution Defendants.

54.     There exists an actual and immediate controversy between Plaintiffs and the Defendants herein as to whether Plaintiffs must defend or indemnify any or all of the Pleko Defendants for any judgment obtained by one or more of the Homeowners or Contribution Defendants against the Pleko Defendants.

55.     Without the ability to maintain this action, Plaintiffs will be subjected to multiple suits on the same issue that can result in differing and conflicting decisions and result in a waste of judicial time and resources.

<u>RELIEF REQUESTED UNDER COUNT I</u>

WHEREFORE, Plaintiffs pray that this Court:

i)      Declare that there is no coverage for the Pleko Defendants under the subject contracts for the claims made against them by Homeowners and/or Contribution Defendants;

ii)     Adjudicate the rights and obligation of the Plaintiffs regarding the scope of the duty to defend the Pleko Defendants for the claims made against them by Homeowners and/or Contribution Defendants;

iii)    Declare that Plaintiffs are not obligated under the relevant contracts to indemnify the Pleko Defendants for any settlement made by them or for any judgment obtained by Homeowners and/or the Contribution Defendants against the Pleko Defendants;

iv)   Declare that Plaintiffs are not obligated under the relevant contracts to defend or indemnify the Pleko Defendants for any future claims arising from the EIFS products under the subject contracts;

v)   Declare that Plaintiffs are entitled to reimbursement of some or all defense costs expended in defending the Pleko Defendants in the state court suits; and

vi)   Grant to the Plaintiffs such other general or specific relief as may be appropriate.

COUNT II.
INSURANCE COVERAGE CONTROVERSY
RELEVANT TO THE VALLEY FORGE AND TRANSPORTATION CONTRACTS

56.   The Homeowners and the Contribution Defendants will attempt to collect any judgment they obtain against Byrd & Cook in the state court suits from Valley Forge and Transportation under the Valley Forge and Transportation insurance contracts.

57.   For the reasons set forth in more detail below, the Valley Forge and Transportation insurance contracts do not cover some or all of the Homeowners' and Contribution Defendants' claims against Byrd & Cook in the state court suits.

58.   Transportation issued a contract for the period of June 10, 2002 to June 10, 2003, and Valley Forge issued contracts for the periods from June 10, 2003 to June 10, 2005 containing the following Insuring Agreement, terms, exclusions and definitions:

**A.   COVERAGES**

    **1.   Business Liability**

        **a.**   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to

defend the insured against any "suit" seeking damages for "bodily injury," "property damage," "personal injury," or "advertising injury" to which this insurance does not apply. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result. But:

    (1)    The amount we will pay for damages is limited as described in SECTION D - LIMITS OF INSURANCE; and

    (2)    Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements or medical expenses.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under COVERAGE EXTENSION - SUPPLEMENTARY PAYMENTS.

**b.**    This insurance applies:

    **(1)**    To "bodily injury" and "property damage" only if:

        **(a)**    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

        **(b)**    The "bodily injury" or "property damage" occurs during the policy period.

    **(2)**    To:

        **(a)**    "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

        **(b)**    "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

        but only if the offense was committed in the "coverage territory" during the policy period.

c.   Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

d.   "Property damage" that is loss of use of tangible property that is not physically injured will be deemed to occur at the time of the "occurrence" that caused it.

*       *       *

**B.   EXCLUSIONS**

**1.   Applicable to Business Liability Coverage**

This insurance does not apply to:

a.   Expected or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b.   Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1)   That the insured would have in the absence of the contract or agreement; or

(2)   Assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purpose of liability assumed in an "insured contract," reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage," provided:

31

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

\*       \*       \*

**f.** Pollution

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

**(i)** if the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

**(ii)** if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraphs **(a)** and **(d)(i)** do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

**(2)**   Any loss, cost or expense arising out of any:

      **(a)**   Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

      **(b)**   Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

\*     \*     \*

**j.**   Professional Services

"Bodily injury," "property damage," "personal injury" or "advertising injury" due to rendering or failure to render any professional service.  This includes but is not limited to:

\*     \*     \*

**(2)**   Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

**(3)**   Supervisory, inspection or engineering services;

\*     \*     \*

**k.**   Damage to Property

"Property damage" to:

33

\*　　\*　　\*

(5)　That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6)　That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

\*　　\*　　\*

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

l.　Damage to Your Product

"Property damage" to "your product" arising out of it or any part of it.

m.　Damage to Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

n.　Damage to Impaired Property or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1)　A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2)　A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

o.　Recall of Products, Work or Impaired Property

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)**    "Your product";

**(2)**    "Your work"; or

**(3)**    "Impaired property";

If such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

*        *        *

**F.    DEFINITIONS**

*        *        *

**3.**    **"Bodily Injury"** means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

*        *        *

**7.**    **"Impaired Property"** means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

   **a.**    It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   **b.**    You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

      **(1)**    The repair, replacement, adjustment or removal of "your product" or "your work"; or

      **(2)**    Your fulfilling the terms of the contract or agreement.

*        *        *

8.    **"Insured Contract"** means

*        *        *

f.    That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization.  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contact or agreement:

*        *        *

**(b)**    That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(1)**    Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

**(2)**    Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

**(c)**    Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(b)** above and supervisory, inspection or engineering services; or

*        *        *

12.    **"Occurrence"** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

*        *        *

14.   **"Products-Completed Operations Hazard";**

a.   Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1)   Products that are still in your physical possession; or

(2)   Work that has not yet been completed or abandoned.  However, "your work" will be deemed completed at the earliest of the following times:

(a)   When all of the work called for in your contract has been completed.

(b)   When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c)   When that part of the work done at a job site has been put to its intended use by any other person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

The "bodily injury" or "property damage" must occur away from premises you own or rent, unless your business includes the selling, handling or distribution of "your product" for consumption on premises you own or rent.

\*       \*       \*

15.   **"Property Damage"** means:

a.   Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

  **b.**  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

\*  \*  \*

**19.**  **"Your Product"** means:

  **a.**  Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

    **(1)**  You;

    **(2)**  Others trading under your name; or

    **(3)**  A person or organization whose business or assets you have acquired; and

  **b.**  Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

  **a.**  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

  **b.**  The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

**20.**  **"Your work"** means:

  **a.**  Work or operations performed by you or on your behalf; and

  **b.**  Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes

38

     **a.**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

     **b.**    The providing of or failure to provide warnings or instructions.

*    *    *

59.    The Valley Forge contracts contain the following endorsement limiting coverage:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**FUNGI / MOLD / MILDEW / YEAST / MICROBE EXCLUSION AND WATER DAMAGE LIMITATION ENDORSEMENT**

This endorsement modifies insurance provided under the following:

BUSINESS ACCOUNT PACKAGE POLICY - BUSINESS LIABILITY COVERAGE FORM

**A.**    The following exclusion is added to **SECTION B. 1., EXCLUSIONS - Applicable to Business Liability Coverage:**

This insurance does not apply to:

**Fungi and Microbes**

**(1)**    "Bodily injury" or "property damage" arising out of or relating to, in whole or in part, the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or growth or presence of any "fungi" or "microbes."

**(2)**    Any loss, cost or expense arising out of or relating to the testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, or disposing of, or in any way responding to or assessing the effects of "fungi" or "microbes" by any insured or by anyone else.

**(3)**    "Property damage" caused by water where there also exists any "property damage" arising out of or relating to, in whole or in part, the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or growth or presence of any "fungi" or "microbes."

39

This exclusion applies regardless of any other cause or event that contributes concurrently or in any sequence to such injury or damage, loss, cost or expense. This exclusion does not apply where your business is food processing, sales, or serving, and the "bodily injury" is caused solely by food poisoning in connection with such processing, sales, or serving.

**B.**     The following exclusion is added to **SECTION B. 1. p. & q., EXCLUSIONS** –

**Applicable to Business Liability Coverage / "Personal injury" or "advertising injury":**

This insurance does not apply to:

**Fungi and Microbes**

**(1)**     "Personal injury" or "advertising injury" arising out of or relating to, in whole or in part, the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or growth or presence of any "fungi" or "microbes."

**(2)**     Any loss, cost or expense arising out of or relating to the testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, or disposing of, or in any way responding to or assessing the effects of "fungi" or "microbes" by any insured or by anyone else.

This exclusion applies regardless of any other cause or event that contributes concurrently or in any sequence to such injury, loss, cost or expense.

**C.**     The following definitions are added to **SECTION F., DEFINITIONS**:

"Fungi" means any form of fungus, including but not limited to, yeast, mold, mildew, rust, smut or mushroom, and including any spores, mycotoxins, odors, or any other substances, products, or byproducts produced by, released by, or arising out of the current or past presence of fungi. But "fungi" does not include any fungi intended by the insured for consumption.

"Microbe(s)" means any non-fungal microorganism or non-fungal, colony-form organism that causes infection or disease. "Microbe" includes any spores, mycotoxins, odors, or any other substances, products, or byproducts produced by, released by, or arising out of the current or past

presence of microbes. But "microbe" does not mean microbes that were transmitted directly from person to person.

60.     The Valley Forge contracts contain the following endorsement limiting coverage:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**AMENDMENT OF INSURING AGREEMENT**

**KNOWN OR CONTINUING INJURY OR DAMAGE**

This endorsement modifies insurance provided under the following:

BUSINESS ACCOUNT PACKAGE POLICY - BUSINESS LIABILITY COVERAGE FORM

**Section A.1.b. (1), COVERAGES / Business Liability**, is amended to add the following provisions:

(c)     With respect to "bodily injury" or "property damage" that continues, changes or resumes so as to occur during more than one policy period, both of the following conditions are met:

   (i)     Prior to the policy period, no "Authorized Insured" knew that the "bodily injury" or "property damage" had occurred, in whole or in part; and

   (ii)    During the policy period, an "Authorized Insured" first knew that the "bodily injury" or "property damage" had occurred, in whole or in part.

   For purposes of this paragraph, **A.1.b.(1) (c)** only, if **(a)** "bodily injury" or "property damage" that occurs during this policy period does not continue, change or resume after the termination of this policy period; and **(b)** no "Authorized Insured" first knows of this "bodily injury" or "property damage" until after the termination of this policy period, then such first knowledge will be deemed to be during this policy period.

(d)     "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any "Authorized Insured" includes any

41

continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

(e)     "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any "Authorized Insured":

(i)     Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(ii)     Receives a written or verbal demand, claim or "suit" for damages because of the "bodily injury" or "property damage"; or

(iii)     Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

Section F., DEFINITIONS, is amended to add the following one (1) definition:

"Authorized Insured" means any insured listed under Paragraph 1. of Section C., Who Is An Insured, or any "employee" authorized by such an insured to give or receive notice of an "occurrence" or claim.

61.     Under the terms, conditions, definitions, limitations and exclusions in the Valley Forge and Transportation contracts, including without limitation the policy language set forth above, the Valley Forge and Transportation contracts do not cover the claims asserted against Byrd & Cook in the state court suits to the extent that:

a.  claims are for "bodily injury" or "property damage" that takes place outside the policy period(s);

b.  the claims are for "bodily injury" or "property damage" that was expected or intended from the standpoint of the insured as barred by Exclusion a;

c.  the claims are for "bodily injury" or "property damage" for which the insured is obligated to pay as damages by reason of the assumption of liability in a contract or agreement as barred by Exclusion b;

d.  the claims are for alleged damages that are not "damages," as the contracts use that term;

e.  the claims are for "bodily injury" or "property damage" barred by Exclusion f;

f.  the claims are for "bodily injury" or "property damage" barred by Exclusion j;

g.  the claims are for "property damage" barred by Exclusion k;

h.  the claims are for "property damage" to "your product" arising out of it or any part of it as barred by Exclusion l;

i.  the claims are for "property damage" to "your work" arising out of it or any part of it as barred by Exclusion m;

j.  the claims are for "property damage" to "impaired property" or property that has not been physically injured, arising out of a defect, deficiency, inadequacy or dangerous condition in "your product" or "your work," or a delay or failure by the insured or anyone acting on its behalf to perform a contract or agreement in accordance with its terms as barred by Exclusion n;

k.  the claims are for any loss, cost or expense incurred by the insured or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of the EIFS product, "your work" or "impaired property" as barred by Exclusion o;

l.  the claims are for punitive damages that are not covered as a matter of law or public policy;

m.  one or more of the conditions of the contracts has been breached or otherwise has not been met;

n.  there has been no "occurrence" as defined in the policies;

o.  the claims are not for damages on account of "bodily injury" or "property damage" as defined by the policies;

p.  the claims arise from conditions, perils, hazards, losses or liabilities that were known to the policyholder at the time the contract was issued, were the result of a non-fortuitous event and/or otherwise constitute an uninsurable risk;

q.  the policyholder or someone acting on its behalf concealed, misrepresented or failed to disclose material facts in applying for the contract(s);

r.  the alleged liabilities arose from a loss that was in progress or that was known prior to the effective date of the relevant contract(s);

s.  the insurance contracts have been impaired and/or exhausted by the payment of past claims;

t.  deductibles and/or self insured retention amounts have not been paid;

u.  coverage is excluded for the period of June 10, 2003 to June 10, 2005 due to the endorsement entitled, **"FUNGI / MOLD / MILDEW / YEAST / MICROBE EXCLUSION AND WATER DAMAGE LIMITATION ENDORSEMENT"**;

v.  coverage is excluded for the period of June 10, 2003 to June 10, 2005 due to the endorsement entitled, **"AMENDMENT OF INSURING AGREEMENT KNOWN OR CONTINUING INJURY OR DAMAGE"**; and/or

w.  some other contractual provision limits or eliminates coverage.

62.     For one or more of the reasons set forth above, as well as other reasons that Plaintiffs may hereafter discover, there is no coverage under the Valley Forge or Transportation contracts and, therefore, Plaintiffs have no obligation to defend or indemnify Byrd & Cook for the claims made against it by Homeowners or Contribution Defendants.

63.     There exists an actual and immediate controversy between Plaintiffs and the Defendants herein as to whether Plaintiffs must defend or indemnify Byrd & Cook for any judgment obtained by one or more of the Homeowners or Contribution Defendants against Byrd & Cook.

64.     Without the ability to maintain this action, Plaintiffs will be subjected to multiple lawsuits on the same issue that can result in differing and conflicting decisions and result in a waste of judicial time and resources.

## RELIEF REQUESTED UNDER COUNT II

WHEREFORE, Plaintiffs pray that this Court:

(i)      Declare that there is no coverage for Byrd & Cook under the subject contracts for the claims made against it by Homeowners or Contribution Defendants;

(ii)     Adjudicate the rights and obligation of the Plaintiffs as to the scope of the duty to defend Byrd & Cook for the claims made against it by Homeowners and/or Contribution Defendants;

(iii)    Declare that Plaintiffs are not obligated under the subject contracts to indemnify Byrd & Cook for any settlement made by it or for any judgment obtained by Homeowners or the Contribution Defendants against Byrd & Cook;

(iv)     Declare that Plaintiffs are not obligated under the subject contracts to defend or

indemnify Byrd & Cook for any future claims arising from the EIFS products

under the subject contracts;

(v)     Declare that Plaintiffs are entitled to reimbursement of all defense costs expended

in defending the Byrd & Cook Defendants in the state court suits; and

(vi)    Grant to the Plaintiffs such other general or specific relief as may be appropriate.

This the 19th day of May, 2006.

Respectfully submitted,

TRANSCONTINENTAL INSURANCE
COMPANY, CONTINENTAL CASUALTY
COMPANY, VALLEY FORGE INSURANCE
COMPANY, AND TRANSPORTATION
INSURANCE COMPANY

_____
Robert A. Miller (MSB #3305)
Meade W. Mitchell (MSB #9649)
P. Ryan Beckett (MSB # 99524)

THEIR ATTORNEYS

OF COUNSEL:

BUTLER, SNOW, O'MARA, STEVENS & CANNADA, PLLC
17th Floor, AmSouth Plaza
Post Office Box 22567
Jackson, Mississippi 39225-2567
(P)(601) 948-5711
(F)(601) 985-4500
(E) bobby.miller@butlersnow.com
(E) meade.mitchell@butlersnow.com
(E) ryan.beckett@butlersnow.com

Jackson 1372617v.2